UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY L. FENTON,<br><br>                               Plaintiff,<br><br>v.<br><br>GREG KIRK; JMK PROPERTIES; and DOES 1–50,<br><br>                             Defendants. | Case No.: 21-CV-69 JLS (KSC)<br><br>**ORDER: (1) GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*, AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT**<br><br>(ECF Nos. 1, 2) |

Presently before the Court are Plaintiff Nancy L. Fenton's Complaint ("Compl.," ECF No. 1) and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Mot.," ECF No. 2). Having carefully considered Plaintiff's Complaint, IFP Motion, and legal arguments and the applicable law, the Court **GRANTS** Plaintiff's IFP Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint.

### *IN FORMA PAUPERIS* MOTION

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

///

///

1

21-CV-69 JLS (KSC)

$400.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if she is granted leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  Although the statute does not specify the qualifications for proceeding IFP, the plaintiff's affidavit must allege poverty with some particularity.  *Escobeda v. Applebees*, 787 F.3d 1226, 1234 (2015).  Granting a plaintiff leave to proceed IFP may be proper, for example, when the affidavit demonstrates that paying court costs will result in a plaintiff's inability to afford the "necessities of life."  *Id.*  The affidavit, however, need not demonstrate that the plaintiff is destitute.  *Id.*

Here, Plaintiff's affidavit shows that she earns $962.00 per month in retirement, with no other sources of income.  *See* IFP Mot. at 1–2.  Plaintiff does not report having any cash, *see id.* at 2; reports holding $200.00 in her checking account, *see id.*; and claims a 2003 Accord MDX worth approximately $2,000.00 and other, unspecified assets worth approximately $3,000.  *See id.* at 3.  Plaintiff's monthly expenses exceed her monthly income.  *See id.* at 4–5.

The Court concludes that Plaintiff adequately has demonstrated that paying the $400 filing fee would result in her inability to afford the necessities of life.  Accordingly, the Court **GRANTS** Plaintiff's IFP Motion.

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)**

**I.   Standard of Review**

Because Plaintiff is proceeding IFP, her Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2).  *See, e.g.*, *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (per curiam) (holding 28 U.S.C. § 1915(e)(2) screening applies to non-prisoners

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016)).  The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

proceeding IFP); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). Under this statute, the Court must *sua sponte* dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez*, 203 F.3d at 1126–27. "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"When a court does not have jurisdiction to hear an action, the claim is considered frivolous." *Johnson v. E. Band Cherokee Nation*, 718 F. Supp. 6, 6 (N.D.N.Y. 1989). Moreover, "[t]he Court has an independent obligation to determine whether it has subject-matter jurisdiction." *Cox v. Lee*, No. CV-20-0275-PHX-DMF, 2020 WL 1904625, at *2 (D. Ariz. Apr. 17, 2020) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citation omitted). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action" (emphasis added). As the plain language of Rule 12(h)(3) suggests, this requirement is mandatory. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (noting that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived'"; therefore, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety'") (citation omitted).

II.   **Plaintiff's Factual Allegations**

On or about March 12, 2020, at approximately 2:30 p.m., Defendant Greg Kirk,[2] allegedly a real estate broker; another man believed to be an attorney named James

---

[2] The Complaint states "plaintiff," but this appears to be a typographical error.

McKinley; and a cleaning woman entered a secure gate to the property where Plaintiff lives. *See* Compl. ¶¶ 3, 12. Plaintiff alleges these three individuals "entered [her] property . . . [with the] intent . . . to frighten [her] into leaving under threat and pressure to leave under force." *Id.* ¶ 3. Plaintiff opened her door and asked the three individuals what they were doing. *See id.* ¶ 4. Mr. Kirk said he was looking for the owner. *See id.* ¶ 5. Plaintiff asked him for his name and identification, and Mr. Kirk said, "I am Greg Kirk." *Id.* ¶ 6. Plaintiff responded that the was the owner. *See id.*

At that point, Mr. Kirk "took one look at [Plaintiff] and became very aggressive." *Id.* ¶ 7. He pushed Plaintiff aside, pushed her screen door open, and stepped across the threshold to Plaintiff's home, stating, "I am the owner of this property, you need to leave right now." *Id.* (internal quotation marks omitted). Plaintiff told Mr. Kirk he must be mistaken, as she had lived at the property for twenty-three years and had a copy of her title to the property. *See id.* ¶ 8. Plaintiff asked Mr. Kirk to leave, but he refused "and again pushed past [Plaintiff] to enter [her] home." *Id.*

Plaintiff screamed as loudly as she could, "but [Mr. Kirk] did not budge." *Id.* ¶ 9. He shoved Plaintiff again and told her to leave, because "this is my home." *Id.* Plaintiff again asked Mr. Kirk to leave, but he refused. *See id.*

Plaintiff pointed to her window, where her title is affixed, and Mr. Kirk read it. *See id.* ¶¶ 11–12. He said, "So what? I'm the owner now." *Id.* ¶ 12. Plaintiff again asked Mr. Kirk to leave, and he again refused. *See id.* Mr. Kirk pushed Plaintiff again, causing her to stumble, and told Plaintiff "[she had] to leave now," becoming "even more aggressive and louder." *Id.* ¶ 13. Plaintiff told Mr. Kirk he had to leave now. *See id.* She picked up her phone and called the police, causing Mr. McKinley to say to Mr. Kirk, "Man, we should leave now." *Id.* ¶ 15 (internal quotation marks omitted). The men ran down the steps, jumped into their cars, and sped away. *See id.* ¶¶ 15–16. The cleaning lady "was hanging out of her window yelling vile obscenities." *Id.* ¶ 16.

Plaintiff alleges that "Defendant or his assistants continues to recklessly follow [her], knock on [her] door and calling out [her] name at 3: A.M." *Id.* ¶ 18; *see also id.* ¶ 17

(indicating Plaintiff has experienced "continued harassment at 3 A.M. in the morning, knocking on [her] door, removing [her] secured gate, telephone calls and people following [her]," causing "the loss of the peaceful enjoyment of [her] home and the lack of sleep").

Plaintiff "did not consent to Defendant's act[s]," *see id.* at 3, and she was afraid of falling, *see id.* ¶ 10. Plaintiff is a senior citizen with nerve damage on her right side, and her blood pressure was elevated to a dangerous level and she experienced chest pains. *See id.* She "was literally and physically being pushed around by [Mr. Kirk]." *Id.* She also "suffered extreme mental anguish and physical pain." *See id.* ¶ 15. Plaintiff alleges that "Defendant intended to cause and did cause Plaintiff to suffer apprehension, pain and suffering, extreme Stress and Duress, immediately affecting her Health mental and physical damages." *Id.* ¶ 17.

On January 12, 2021, Plaintiff filed her Complaint and IFP Motion. She asserts two claims: (1) assault and (2) battery. *See generally* Compl.

### III. Analysis

"Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'" *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)). A plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–183 (1936)). "This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action." *Wilkerson v. Butler*, 229 F.R.D. 166, 169 (E.D. Cal. 2005) (citing *McNutt,* 298 U.S. at 189; Fed. R. Civ. P. 8(a)(1) (requiring "a short and plain statement of the grounds for the court's jurisdiction")).

Plaintiff's Complaint is utterly devoid of any jurisdictional allegations, *see generally* Compl. This alone warrants dismissal of the Complaint. *See, e.g.*, *Wilkerson*, 229 F.R.D.

at 169 (dismissing with leave to amend pro se complaint that failed to allege grounds for subject matter jurisdiction). However, even overlooking this deficiency, it does not appear, based on the facts presently alleged by Plaintiff, that this Court has subject-matter jurisdiction over this action.

There are two main bases for a district court's subject-matter jurisdiction: federal question jurisdiction and diversity jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). As to federal question jurisdiction, under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, Plaintiff's action does not arise under the Constitution or any federal laws. Rather, her two claims, assault and battery, are state common law claims. *See So v. Shin*, 212 Cal. App. 4th 652, 668, *as modified on denial of reh'g* (Jan. 28, 2013). Indeed, Plaintiff appears to cite two state statutes, CCP 240 and 720 ILCS § 12-3, as the basis for her claims, and cites to various state court decisions. *See* Comp. at 3, ¶¶ 20, 23–25. Accordingly, based on the allegations presently contained in the Complaint, it appears the Court lacks federal question jurisdiction over Plaintiff's claims. *See, e.g.*, *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (finding no federal question jurisdiction where "the plaintiffs alleged state law claims [for sexual harassment, hostile work environment, sex discrimination, wrongful termination, assault and battery, invasion of privacy, and retaliation] which included incidental reference to a federal statute and the U.S. Constitution," and "[t]he remedies sought were founded exclusively on state law").

As to diversity jurisdiction, under 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." However, Plaintiff alleges that she resides in San Diego, California, *see* Compl. ¶ 1, and that "Defendant" (presumably Mr. Kirk) "is an individual and a business owner at [an address in San Diego, California]," *id.* ¶ 2. Plaintiff does not allege the citizenship of (or indeed, any facts whatsoever concerning) Defendant JMK Properties.

*See generally id.* Accordingly, it does not appear that Plaintiff and Defendants have "complete diversity" such that this Court can exercise diversity jurisdiction over this matter. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining that 28 U.S.C. § 1332(a) requires "complete diversity," and "thus applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant"). Accordingly, it does not appear from the face of the Complaint that this Court has diversity jurisdiction over this action, either.

In light of the foregoing, the Court finds that it lacks subject-matter jurisdiction over Plaintiff's Complaint, and accordingly dismissal is warranted pursuant to 28 U.S.C. § 1915(e)(2).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's IFP Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint as frivolous due to lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff **MAY FILE** an amended complaint that cures the deficiencies noted above within forty-five (45) days of the electronic docketing of this Order. Any amended filing must be complete in itself, without reference to Plaintiff's original Complaint. Any claim not re-alleged in Plaintiff's amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

Should Plaintiff fail to file an amended complaint within forty-five (45) days, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and her failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of

the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action."). Such dismissal would be without prejudice to Plaintiff refiling her claims in state court.

**IT IS SO ORDERED.**

Dated: February 8, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge